**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Midwest Family Mutual Insurance Company, | No. CV-23-00635-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Green Fuel Technologies, *et al.*, | |
| Defendants. | |

At issue is Defendant Green Fuel Technologies, LLC's ("Defendant") Motion to Set Aside Clerk's Entry of Default (Doc. 17, "Mot."), to which Plaintiff Midwest Family Mutual Insurance Company filed an Opposition (Doc. 18, "Opp.") and Defendant filed a Reply (Doc. 19, "Reply"). Also at issue is Plaintiff's Motion for Default Judgment by Court. (Doc. 16.)

**I.    BACKGROUND**

In 2020, ProFab Construction, LLC ("ProFab") subcontracted Aztec Concrete & Coating Services, LLC ("Aztec") to do concrete construction work on a project. Aztec hired Defendant to provide concrete. Defendant's concrete allegedly failed to meet strength requirements after it had been poured, which forced ProFab to remove and replace the concrete along with underground electrical and plumbing work that had already been done on the project. (Doc. 1-2.) ProFab sued Aztec and Defendant, claiming damages, in relevant part, for the cost of repairing or replacing the electrical and plumbing work. (Doc. 1-2.) Aztec also filed a cross-claim against Defendant. (Doc. 1-3.) Plaintiff, who had

issued Defendant an insurance policy, began providing a defense for Defendant under a reservation of rights. (Doc. 1, "Compl." ¶¶ 4, 17)

On April 14, 2023, Plaintiff filed the Complaint in this action seeking a declaratory judgment that the policy excludes coverage for the claims brought by ProFab and the cross-claims brought by Aztec. (Compl. ¶¶ 20–31.) Plaintiff served Defendant on April 25, 2023, and filed proof of service on May 10, 2023. (Doc. 10.) On May 24, 2023, Defendant had yet to answer, and the Court directed Plaintiff to apply for entry of default or file a status report within seven days of the date of its Order. (Doc. 12.) On May 31, 2023, Plaintiff filed a Request for Entry of Default (Doc. 13), and the Clerk entered default on June 1, 2023 (Doc. 14). On July 14, 2023, Plaintiff filed a Motion for Default Judgment by Court. (Doc. 16.) On July 26, 2023, Defendant filed a Motion to Set Aside Clerk's Entry of Default, asserting that good cause to set aside the default exists because it was not culpable, it has a meritorious defense, and setting aside the default will not prejudice Plaintiff. Plaintiff filed an Opposition, and Defendant filed a Reply.

The Court now resolves Defendant's Motion to Set Aside Clerk's Entry of Default and Plaintiff's Motion for Default Judgment by Court.

## II. ANALYSIS

Federal Rule of Civil Procedure 55(a) states that the Clerk of Court must enter default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Rule 55(c) allows the Court to set aside any entry of default for "good cause." *See O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (noting that a district court's discretion is especially broad when considering whether to set aside entry of default). In deciding whether to exercise its discretion and set aside an entry of default, the Court must consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether the party seeking to set aside the default has no meritorious defense; and (3) whether setting aside the default would prejudice the other party. *United States v. Signed Personal Check No. 730 of Yubran S. Mesle* ("*Mesle*"), 615 F.3d 1085, 1091 (9th Cir. 2010) (citing *Franchise Holding II, LLC*

*v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 925–26 (9th Cir. 2004) (citations omitted). A finding that any one of these factors is true is sufficient reason for the Court to refuse to set aside the default, but the Ninth Circuit also cautions that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Id.* (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).

### A. Defendant's Conduct

In evaluating the first factor, the Court must determine whether Defendant's conduct was culpable. *See TCI Grp. Life Ins. Plan v. Knobber*, 244 F.3d 691, 697 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). "[A] defendant's conduct is culpable if [the defendant] has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Id.* (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988)). The Ninth Circuit has held that conduct can be intentional only where "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Mesle*, 615 F.3d at 1092 (9th Cir. 2010) (quoting *TCI*, 244 F.3d at 697)).

Defendant argues that it was not culpable because its office manager, who typically transmits all legal matters to its usual counsel, missed "approximately ten days" of work due to a death in the family. (Mot. at 2; Doc. 17, Ex. A ¶ 4.) Plaintiff counters that the office manager's absence cannot excuse Defendant's conduct because Plaintiff served the complaint on Defendant's statutory agent, John Casey, not the office manager. (Opp. at 9.) Plaintiff points out that Casey is Defendant's "sole organizing member" and is "responsible for management of [Defendant]," and Defendant has not explained why Casey did not send the Complaint to counsel. (Opp. at 9; Doc. 17, Ex. A.) Plaintiff adds that even if the office manager was solely responsible for sending the complaint to counsel, he missed only about ten days, meaning he returned to the office in mid-May. The Clerk entered default on June 1 (Doc. 14), and Plaintiff filed a Motion for Default Judgment on July 14. (Doc. 16).

Defendant did not file the Motion to Set Aside until July 26, nearly two months after the manager's return to the office and the entry of default.

The Court cannot conclude that Plaintiff deliberately or willfully failed to answer. Although the office manager's ten-day absence is not a strong excuse for a two-month delay, especially when the office manager was not the person served, Defendant does not allege that Plaintiff's actions rise to the level of devious or bad-faith conduct required to find culpability. Nor will the Court assume, without more, that Plaintiff acted with malicious intent. Therefore, the first factor weighs in favor of setting aside the default.

### B.     Meritorious Defense

To satisfy the "meritorious defense" requirement, the movant need only allege sufficient facts that, if true, would constitute a defense. *Id.* at 1094. Nonetheless, it is important that the movant present the Court with specific facts. *Franchise Holding II*, 375 F.3d at 926. "A 'mere general denial without facts to support it' is not enough to justify vacating a default or default judgment." *Id.* (quoting *Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969)).

In the Complaint, Plaintiff alleges that it has no duty to defend Defendant and cites several policy exclusions, including property damage and damage to impaired property. (Compl. ¶ 22.) The property-damage exclusion excludes coverage for damage to "any property that must be restored, repaired or replaced because '[Defendant's] work' was incorrectly performed on it." (Doc. 1-4 at 52.) The damage-to-impaired-property exclusion excludes coverage for property damage to impaired property "arising out of . . . [a] defect, deficiency, inadequacy or dangerous condition in '[Defendant's] product' or '[Defendant's] work.'" (Doc. 1-4 at 52.)

Defendant argues that it has a meritorious defense because the claims brought against it in the underlying litigation include damages for repairing and replacing plumbing and electrical work done on the project, but not by Defendant, and thus these claims are covered under the policy. Plaintiff responds by focusing on the property-damage exclusion to argue that the claims are excluded. Specifically, Plaintiff cites *Sunwestern Contractors,*

*Inc. v. Cincinnati Indemnification Co.*, 390 F. Supp. 3d 1009 (D. Ariz. 2019), to argue that this Court has previously rejected an argument similar to Defendant's. In *Sunwestern*, the insured constructed part of a pipeline for the City of Tucson before conducting a pressure test that failed, which seriously damaged the pipeline, components of the pipeline, and the surrounding areas. *Sunwestern*, 390 F. Supp. 3d at 1011. In examining an insurance policy similar to the one at issue here, this Court ruled that the property-damage exclusion "unambiguously precluded[d] coverage for the Incident and all residual property damage stemming from the Incident." *Id.* at 1018. However, the Court also noted that the policy "does not exclude coverage for consequential damage to non-defective property caused by [the] incorrectly performed work." This distinction is particularly relevant here, where the damage claimed is for non-defective property that had to be replaced because of Defendant's allegedly defective concrete.

Defendant also argues that the damage-to-impaired-property exclusion does not apply because that damage was not caused by "[Defendant's] work" within the meaning of the policy. Defendant supports this argument with citations to a District of Kansas case and a Texas Supreme Court case which, despite being from other jurisdictions, are persuasive because of their similarities to the facts and policies here. *See Black & Veatch Corp. v. Aspen Ins. (Uk) Ltd.*, 378 F. Supp. 3d 975, 1000 (D. Kan. 2019) (explaining that a similar damage-to-impaired-property exclusion "should not apply to eliminate coverage where the incorporation of the defective work or product does no actual physical damage to tangible property but the removal or repair of that work or product has or will physically injur[e] other property." (quoting Scott. C. Turner, *Insurance Coverage of Construction Disputes* § 26:19 (2019))); *see also U.S. Metals, Inc. v. Liberty Mut. Grp., Inc.*, 490 S.W.3d 20, 28 (Tex. 2015).

The Court need not determine at this stage whether these defenses are winning arguments—only whether they are meritorious. And this Order shall not preclude the parties from raising and elaborating on these same arguments later in this litigation. But for the purposes of the present Motion, the Court concludes that Defendant has met its burden

of presenting a meritorious defense. The second factor weighs in favor of setting aside the default.

### C. Prejudice

Finally, the Court must evaluate whether setting aside the default would prejudice Plaintiff. "To be prejudicial, the setting aside of a [default] must result in greater harm than simply delaying resolution of the case." *TCI*, 244 F.3d at 701. The standard the Court applies is whether Plaintiff's ability to pursue its claim would be hindered if the default were set aside. *Id.* For a delay to be prejudicial, it must result in tangible harm, such as the loss of evidence, increased difficulties of discovery, or greater opportunities for fraud or collusion. *Id.* (citing *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433–34 (6th Cir. 1996)).

Plaintiff acknowledges that it is not prejudiced in its ability to pursue its claim. (Opp. at 12.) Nevertheless, Plaintiff argues that the Court should find prejudice here because Plaintiff has been paying to defend Defendant in the underlying lawsuit for over two years, and the delay has caused Plaintiff to maintain this expense despite its position that it has no duty to defend.

First, the Court notes that a delay of a few months produces relatively minimal prejudice when the litigation expenses have already been accumulating for over two years. More importantly, however, the alleged prejudice here essentially amounts to no "greater harm than simply delaying resolution of the case." *See TCI*, 244 F.3d at 701. The Court therefore concludes that Plaintiff is not prejudiced by the delay, and the third factor weighs in favor of setting aside the default.

### III. CONCLUSION

All three factors weigh in favor of setting aside the default. The Court therefore shall set aside the entry of default.

**IT IS THEREFORE ORDERED** granting Defendant Green Fuel Technologies, LLC's Motion to Set Aside Clerk's Entry of Default (Doc. 17). The Clerk of Court is

directed to set aside the Entry of Default against Defendant Green Fuel Technologies, LLC (Doc. 14).

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Default Judgment by Court (Doc. 16).

**IT IS FURTHER ORDERED** that Defendant Green Fuel Technologies, LLC is directed to file an Answer or otherwise respond to the Complaint by **November 27, 2023**.

Dated this 13th day of November, 2023.

Honorable John J. Tuchi
United States District Judge